### FRAME et al. v. SHORT et al.

No. 27737. June 21, 1938.

Rehearing Denied Sept. 13, 1938.

Application for Leave to File Second Petition for Rehearing Denied Oct. 11, 1938.

A. B Riddle and Earl Q. Gray, for plaintiffs in error.

H. C. Potterf and J. M. Poindexter, for defendants in error Marie J. Davis and W. W. Martin.

Jas. A. Veazey and Forrest M. Darrough, for defendant in error Carter Oil Company.

Dolman, Dyer & Dolman, for defendant in error Walter H. Gant.

Geo. M. Nicholson, for defendants in error W. W. Short and O. S. (Scott) Sparks.

Brett & Brett, for defendants in error J. E. Morris, Ada B. Luster, and Canadian Holding Company.

PHELPS, J. This action was commenced by the defendant in error W. W. Short against defendants in error Walter H. Gant and the Carter Oil Company, a corporation, to determine and recover royalty interests in real property and for an accounting.

Conforming to the pleadings and order of court, plaintiffs in error and the remaining defendants in error were made parties defendant and filed pleadings setting up their respective claims of interest in the premises. In the judgment the court determined and fixed the rights and interests of the parties in the royalty. From the part of the judgment adverse to them, Geraldine Frame, Paul S. Frame, and Earl Q. Gray appeal.

The interests of the original defendants in the controversy is substantially as follows: On July 6, 1930, the defendants W. W. Short, Fannie Short, O. S. (Scott) Sparks, J. E. Morris, Geraldine Frame, Paul S. Frame, and the Canadian Holding Company executed to Walter H. Gant an oil and gas lease on their interests in the lands involved, which lease is referred to as a "community" lease. The lease provides for delivery to the lessors of an equal one-eighth of all oil produced; and also provides for delay rental of $40 a year. Additional provisions are as follows:

"In case said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which his interest bears to the whole and undivided fee. * * *

"If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. * * *

"If at any time there be as many as four parties entitled to rentals or royalties, lessee may withhold payments thereof unless and until all parties designate. in writing, in a recordable instrument to be filed with the lessee, a common. agent to receive all payments due thereunder, and to execute division and transfer orders on behalf of said parties, and their respective successors in title."

On July 16, 1930, the defendants W. W. Martin and Marie J. Davis executed to Gant an oil and gas lease on Form 88 or for an "undivided ¼ interest" in the premises. This lease also provides for delivery to grantors of an undivided one-eighth royalty of all oil produced from the premises and for delay rental of $40 per year. Among the provisions of this lease is the following:

"If said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in proportion which his interest bears to the whole and undivided fee."

Gant developed the leased premises and sold the oil to the defendant Carter Oil Company. In its answer and cross-petition the Carter Oil Company alleges that all the lessors together are entitled to receive a one-eighth royalty; that it is holding the proceeds belonging to the grantors until their respective rights and interests are determined. The sole issue presented is the correctness of the judgment decreeing plaintiffs in error to have no interest in the royalty. Plaintiff in error Earl Q. Gray claims an interest in the royalty and rentals in the land under an assignment from Geraldine Frame and Paul S. Frame. The interest of the latter, if any, is based upon a sheriff's deed executed pursuant to a foreclosure decree involving the land in controversy. The part of the decree material to the issue presented is as follows:

"The court further finds that the lien of plaintiff herein is subject to a grant of a one-half royalty interest in and to the east twenty (20) acres of lot four (4) * * * which is now vested in defendant J. E. Morris, and the court construes said grant one-half royalty interest to mean one-half of the one-eighth royalty, that is to say, that if oil or gas is produced from said land under any lease contract, or by the owners of said land, that one-sixteenth of the oil or gas produced from said premises shall be delivered to the said J. E. Morris, his heirs or assigns, free of all costs to him.

"And the court further finds that the lien of plaintiff is subject to a grant of a one half royalty interest in and to the west half of said lot four (4) of section eighteen (18) township one (1) south, range two (2) west, which royalty interest is now vested in the Canadian Holding Company, a corporation, and the court construes said grant of a one-half interest to mean one-half of the one-eighth royalty, that is to say, that if oil or gas is produced from said land under any lease contract, or by the owners of said land, that one-sixteenth of the oil or gas produced from said premises shall be delivered to the Canadian Holding Company, its successors and assigns, and free of all costs to them.

"The court further finds that the defendant W. S. Short is the owner of an undivided one-half interest in the oil and gas and other minerals in and to the east 20 acres of lot 4 of section 18, township 1 south, range 2 west, * * * and that plaintiff's lien above mentioned is subject to the said mineral rights of said defendant W. S. Short, and the court further finds that the owner of said lands has the right to execute oil and gas leases conveying said lands in so far as the one-half royalty interest owned by J. E. Morris in the east 20 acres of lot 4, of section 18, township 1 south, range 2 west and the north half of the southeast quarter of the northeast quarter of section 24, township 1 south, range 3 west and in so far as the one-half royalty interest owned by the Canadian Holding Company in the west half of lot 4 of section 18, township 1 south, range 2 east are concerned, and receive all bonuses and delay rentals paid for said oil and gas lease or leases on said interest, but if oil or gas or either of them is produced from said premises, one-sixteenth of same shall be paid to the owner or owners of said respective royalty interests in said lands as above set out."

S. H. Davis, the mortgagee in the mortgage and the purchaser at the foreclosure sale, on December 26, 1925, executed a warranty deed to the land to Henry Lucas. The deed was made subject to a mineral grant executed by Davis and wife in favor of M.

E. Kannal, dated December 23, 1925, wherein grantors conveyed:

"An undivided ¼ interest in and to all of the oil, petroleum, gas, coal, asphalt, and all other minerals of every kind and character in and under, and that may be produced from * * * all of lot 4 (or S. W.¼ of the S. W.¼) of section 18, township one (1) south, range two (2) west of the Indian Base Meridian, and containing 40.86 acres. * * *

"It is understood, however, that this conveyance is made subject to any valid oil and gas lease now on said premises, but covers and includes an undivided one-fourth (¼) interest in and to all of the oil royalty delay rentals, and gas rentals or royalty due, and to be due, under the terms of said lease, but in the event the said lease for any reason becomes canceled, forfeited or inoperative, then and in that event one-fourth (¼) of said minerals in and under said 40.86 acres of land, and that may be produced therefrom, and one-fourth (¼) of all money derived from the sale of the same shall be owned by the grantee herein."

The mineral grant above described was subsequently assigned to defendants in error Marie J. Davis and W. W. Martin.

The trial court found, and so decreed, that under the sheriff's deed in the foreclosure action, S. H. Davis acquired no mineral rights in the lands except an undivided one-half interest in the west 20 acres of lot 4, which interest was sold to Kannal and·was subsequently acquired by Marie J. Davis and W. W. Martin.

On this point the court, in its findings, held:

"Now, then, J. E. Morris owns, according to the judgment, or owned according to the judgment, then a one-half of a one-eighth, that is a one-sixteenth in the east 20 acres. That Mr. Short owned a like amount in the east 20 acres, and that he sold ·half of his to Mr. Sparks. That disposes of the east 20 acres. I will go to the west 20 acres. The Canadian Holding Company owned a one-half of a one-eighth or one-half of the royalty in the west 20 acres. Therefore, at the time the sheriff walked in and sold that land, he didn't sell those interests, that is he didn't sell the entire tract, he sold the land subject to these outstanding interests, to S. H. Davis, he bought it in. Then S. H. Davis had this tract of land less these royalty interests. the only royalty interests remaining was a one-half of the royalty or a one-sixteenth of the oil in the west 20 acres of the land. That was all the sheriff sold. He sold that to S. H. Davis. Now. then, so you can see how I indicate I should find. the sheriff's deed dated July 27, 1925, gave S. H. Davis the

fee and one-half of the oil and gas interests in the west 20 acres. Then Davis and his wife made a mineral grant to M. E. Kannal. He put in there that he grants a one-quarter interest in all minerals under the land, or that might be produced from the land. He sold all of his interest remaining in that then. He was selling as much as he owned in the land from a mineral standpoint. I would therefore conclude that Mr. and Mrs. Davis went out of the picture in so far as these oil interests are concerned at that time."

Plaintiffs in error challenge this finding and conclusion of the court and assert that a proper interpretation of the foreclosure decree (under the facts presented) would give them "* * * an undivided 11/16 oil rights in the west 20 after the deed is subtracted from the fee-simple titles, and that he owns an undivided 3/16 out of the east 20 after all the mineral rights are subtracted from the east 20."

The controversy arises over the interpretation of the mineral interests in the lands as above stated. The varying constructions placed upon the language in the decree of foreclosure appear to be as numerous as the parties to the action. This situation necessitates our interpretating the decree, which we do under the following computation:

Before foreclosure decree the mineral rights in the land involved were lodged in different parties, making it necessary (or convenient) to divide the 40 acres into the east half and west half so that the respective owners' rights may be definitely established and traced. At this time the ownership of the minerals was as follows:

East Half:

J. E. Morris owned a 1/16 royalty interest, W. W. Short owned a 1/16 royalty interest. W. W. Short owned a 7/16 working interest.

Under the decree of foreclosure the interest of J. E. Morris was definitely established as a royalty interest, designated as such by reason of his not participating in lease bonuses or lease rentals. He was to receive 1/16 of oil and gas if and when produced.

W. W. Short owned a one-half of all mineral rights, in and to the east half. This included one-half of the royalty and one-half of the working interest. The royalty interest was only 1/8 of the 8/8 mineral rights. This 1/8 royalty was divided by sale before foreclosure showing title to

J. E. Morris to 1/16 royalty. Since W. W. Short held one-half of all mineral rights, it will readily be seen that Short owned 1/16 royalty interest also.

Thus it appears that all royalty interest in the east half was disposed of before foreclosure, and the foreclosure decree was entered subject to these prior claims. The decree did not affect any mineral rights in the east half, except certain working interests to which we now refer. There were only 8/8 in all the mineral rights in the east half, and since we have shown that 1/8 has been designated as royalty interest, there could be only 7/8 working interest. As hereinbefore stated, W. W. Short held one-half of all the mineral rights in the east half prior to foreclosure, which included royalty interest and working interest alike, such royalty interest being defined as a 1/16 or one-half of 1/8. It is apparent that Short also owned a one-half of 7/8 working interest. Reducing the 7/8 to 14/16, we have one-half of 14/16, or 7/16, which is the amount of working interest owned by Short. It therefore appears that the ownership of the east half before foreclosure was as follows:

J. E. Morris 1/16 royalty interest, and

W. W. Short 1/16 royalty interest (being all the royalty interest in the east half).

W. W. Short 7/16 working interest.

Title to the remaining 7/16 working interests (with the surface rights) was acquired by Davis through foreclosure. Davis later conveyed a one-fourth interest of all mineral rights to M. E. Kannal. This conveyance covered royalty interest and working interest alike, but inasmuch as Davis had no royalty interest in the east half to convey, his deed to Kannal in reality covered only a one-fourth interest in his 7/16 working interest; consequently, when we consider this one-fourth division by sale to Kannal we must differentiate between royalty and working interest. One-fourth of 1/8 royalty is 1/32. That is what Davis attempted to convey, but he had only the working interest in the east half to convey. We find that all working interest therein is only 7/8 of the mineral rights and not 8/8. Taking a one-fourth of 7/8 and reducing 7/8 to 14/16. we find: One-fourth of 14/16 equals 3.5/16 or 7/32. Thus Davis conveyed to Kannal 3.5/16 or 7/32 working interest in the east half and retained a 3.5/16 or 7/32 working interest.

After Davis' conveyance to Kannal, the

486

mineral title in the east half stood as follows:

| | |
|---|---|
| J. E. Morris | 1/16 royalty interest. |
| W. W. Short | 1/16 royalty interest. |
| Total | 2/16 or all royalty interest. |
| W. W. Short | 7/16 working interest. |
| M. E. Kannal | 7/32 working interest. |
| S. H. Davis | 7/32 working interest. |
| Total | 8/8 mineral rights. |

West Half:

Now, giving consideration to the west half, we find that at foreclosure the west half had one mineral conveyance of record, as follows: The Canadian Holding Company held a 1/16 royalty interest. Therefore, under the foreclosure decree, Davis acquired title to 1/16 royalty interest and 7/8 working interest. The mineral title then stood as follows:

| | |
|---|---|
| The Canadian Holding Company | 1/16 royalty interest. |
| S. H. Davis | 1/16 royalty interest. |
| S. H. Davis | 7/8 royalty interest. |

Davis subsequently conveyed to Kannal a one-fourth interest in all the **mineral rights** in and to the full 40 acres.

Considering the royalty interest first: Davis attempted to convey to Kannal a one-fourth royalty interest in the east half which he did not own. In the west half, we find that Davis acquired title to 1/16 of the royalty therein. One-sixteenth is equal to 2/32. The sale of the one-fourth interest to Kannal is equal to 2/32. Thus, in selling one-fourth royalty to Kannal, in the full 40 acres Davis owned sufficient royalty in the west half to make up the deficiency in the east half, thus complying with the provisions of the conveyance to Kannal whereby he sold a one-fourth royalty interest in the full 40 acres.

Referring now to the division in the working interest in the west half: Reducing the 7/8 working interest to 28/32, instead of 14/16, we find: Davis sold Kannal one-fourth of the 28/32 working interest. Under this conveyance Kannal became owner of 7/32 working interest and Davis retained 21/32 working interest in the west half. Therefore, after his conveyance to Kannal the mineral interests in the west half stood as follows:

| | |
|---|---|
| The Canadian Holding Company a | 1/16 royalty interest. |
| M. E. Kannal a | 2/32 royalty interest (including the deficiency of the royalty interest in the East Half) |
| S. H. Davis a | 21/32 working interest. |
| M. E. Kannal a | 7/32 working interest. |
| Total | 32/32 mineral rights. |

Therefore we find that subsequent to his conveyance to Kannal, Davis owned only a working interest in the lands, as follows:

| | |
|---|---|
| East Half | 7/32 working interest. |
| West Half | 21/32 working interest. |

This working interest, with title to the surface of the land, went to Henry Lucas under his deed from Davis; which interest was subsequently acquired by plaintiffs in error. The record indicates that from the beginning of Davis' title in the lands uncertainty existed as to just what interest he acquired under the sheriff's deed in the foreclosure action. In the deed from Davis to Lucas appears this recital:

"It is the intention of this deed to convey all of the right, title and interest in and to said above-described 40.86 acres of land, which was conveyed to S. H. Davis by sheriff's deed recorded September 12, 1925, in Book 62 of Deeds, page 591 in so far as it affects the above described 40.86 acres of land, and our warranty of the title is limited to whatever interest S. H. Davis received by virtue of said sheriff's deed, and no more, and is further limited and made subject to the undivided one-fourth (1/4) interest in the mineral rights as evidenced by the certain mineral grant executed by S. H. Davis and wife to M. E. Kannal, dated December 23rd, 1925, reference to which is hereby made."

Later, fee title in the land became vested in O. M. Woodward. Woodward conveyed the lands to plaintiffs in error. In this deed practically the same wording is used relative to the extent of the interest intended to be conveyed as appears in the deed from Davis to Lucas. The fact that Davis believed he had a greater mineral interest in the land than he really owned at the time he conveyed to Lucas cannot override the fact that he had less. All that he owned was the working interest hereinbefore defined. In their conveyances of the lands both Davis and Woodward took particular pains to emphasize the fact that they were not conveying a greater interest than Davis received under the decree of foreclosure.

Plaintiffs in error complain that the trial court, by its judgment, attempted to reform certain conveyances in the chain of title. None of the remaining parties to the suit challenge the judgment, and inasmuch as we conclude that plaintiffs in error have no interest in the minerals (except the working interest herein recited), we consider it unnecessary to discuss the question.

In the various briefs the parties present a maize of involved figures and computations of staggering proportions. To attempt to reconcile them would challenge the ingenuity of one trained in the science of higher mathematics. We believe our computation harmonizes with the foreclosure decree and likewise with the essential part of the judgment of the trial court.

From the record it is difficult to ascertain what claim, if any, plaintiffs' in error assert in the working interest in the minerals as distinguished from the royalty interests. Such working interests have been herein determined and fixed, and if necessary the judgment should be modified by the trial court to conform with the computation fixed herein. In all other respects the judgment is affirmed.

BAYLESS, V. C. J., and RILEY, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., and WELCH and DAVISON, JJ., absent.